UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WACELLA H.,[1] | : | Case No. 2:24-cv-02381 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Wacella H. brings this case *pro se* challenging the Social Security Administration's denial of her application for Widow's Insurance Benefits. The case is before the Court upon Plaintiff's *pro se* Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #12), and the administrative record (Doc. #6).

**I.   Background**

Under 42 U.S.C. § 402(e), the widow of an insured decedent is entitled to Widow's Insurance Benefits if the parties were married for nine months before the decedent's passing. The validity of the marriage is governed by the laws of the state where the decedent had a permanent home when he died. 42 U.S.C. § 416(h)(1)(A)(i); 20 C.F.R. § 404.345.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

In the present case, Plaintiff applied for Widow's Insurance Benefits, alleging that she was entitled to benefits because she was the common-law wife of the insured decedent, Garfield H. (wage earner). Plaintiff's application was denied on September 5, 2020, and her request for reconsideration was denied on October 27, 2021. After a hearing, Administrative Law Judge William R. Stanley (ALJ) determined that Plaintiff had not established that she was the decedent's common-law wife. Moreover, the ALJ found Plaintiff's marriage to the wage earner did not meet the 9-month duration requirement to obtain widow's benefits, because she ceremonially married the wage earner on December 19, 2019, and he passed away on June 9, 2020. (Doc. #6, *PageID* #45). Specifically, the ALJ determined that:

> The evidence submitted does establish that [Plaintiff] and the wage earner had a relationship. Unfortunately, the documentation does not prove that the claimant and the wage earner entered into a common law marriage prior to October 10, 1991. …
>
> [Plaintiff] has submitted multiple reports indicating that [she] and the wage earner have been a couple more than 30 years. These reports indicated that [Plaintiff] and the wage earner resided together, and that [Plaintiff] and the wage earner considered themselves husband and wife.
>
> The dates cited in the reports are not specific, and they cannot be definitive evidence of a common law marriage before October 10, 1991. The fact that [Plaintiff] and the wage earner may have had a relationship before 1991 does not establish that they [had a] mutual contract to take each other as man and wife prior to October 10, 1991. …
>
> [Plaintiff] has not submitted clear and convincing evidence that a common law marriage existed between [her] and the wage earner prior to October 10, 1991. There are various reports that indicate a relationship between [Plaintiff] and the wage earner may have existed for more than 30 years. This may have included cohabitation and [Plaintiff] and the wage earner referring to each other as spouses. Unfortunately, the dates cited by the witnesses are all approximate. Even if the elements of a common law marriage were met, there is no way to pinpoint the exact date that occurred….

*Id*. at 45-47. In accordance with these findings, the ALJ denied Plaintiff's application for benefits. *Id*. at 47. Following the Appeals Council's decision affirming the ALJ's determination, Plaintiff sought judicial review of the Commissioner's decision (Doc. #9).

**II.      Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

Plaintiff contends in her *pro se* Statement of Errors that the ALJ failed to properly assess her marriage under Ohio law, under which she would have needed to establish a common-law marriage prior to October 10, 1991—the date that Ohio prohibited common-law marriage—to be entitled to Widow's Insurance Benefits in this case. (Doc. #9, *PageID* #s 276-91).  Plaintiff alleges that she is entitled to benefits because she and Mr. H. entered a common-law marriage that lasted from 1987 until his death in June 2020.  *Id*. at 278.  In response, the Commissioner argues that ALJ reasonably found in this case that Plaintiff did not satisfy her burden of establishing a common-law marriage in Ohio by clear and convincing evidence. (Doc. #12, *PageID* #s 297-306).

As Plaintiff is proceeding *pro se*, her filings and arguments are liberally construed in her favor. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (stating that *pro se* pleadings "are entitled to a liberal construction" and that "appropriate liberal construction requires active interpretation in some cases to construe a *pro se* petition 'to encompass any allegation stating federal relief'") (citations omitted). However, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf …." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) (citing *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989)). Furthermore, "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citations omitted).

To have a valid common-law marriage under Ohio law, a party must prove: 1) words of present intent to create a marriage; 2) cohabitation as husband and wife; and 3) holding out to the

4

public as man and wife. *Smereczynski v. Sec'y, Dep't of Health & Human Servs.*, 944 F.2d 296, 298 (6th Cir. 1991). Plaintiff has the burden to establish the elements of a common-law marriage by clear and convincing evidence under Ohio law. *Cunningham v. Apfel,* 12 F. App'x. 361, 362 (6th Cir. 2001). Clear and convincing evidence is "that degree of proof which produces in the mind of the trier of fact 'a firm belief or conviction as to the allegations sought to be established.'" *Est. of Everhart v. Everhart*, 2014-Ohio-2476, 14 N.E.3d 438, 446–47.

As stated above, one of the elements that Plaintiff had to prove by clear and convincing evidence was a present intent to create a marriage. *Smereczynski*, 944 F.2d at 298. This intent has been characterized under Ohio law as "a meeting of the minds between the parties who enter into a mutual contract to presently take each other as man and wife. … Its absence precludes the establishment of [common-law marriage] even though the parties live together and openly engage in cohabitation." *Nestor v. Nestor*, 15 Ohio St. 3d 143, 146, 472 N.E.2d 1091, 1094 (1984). The two forms of evidence to prove a present intent to marry are either direct evidence or "by way of proof of cohabitation, acts, declarations, and the conduct of the parties and their recognized status in the community in which they reside." *Id*. In the absence of direct evidence, "testimony regarding cohabitation and community reputation tends to raise an inference of the marriage. This inference is given more or less strength according to the circumstances of the particular case. The inference is generally strengthened with the lapse of time during which the parties are living together and cohabiting as man and wife." *Id*.

In this case, evidence in both Plaintiff's Statement of Marital Relationship and hearing testimony could reasonably call into doubt whether a present intent to marry existed before

5

October 10, 1991, failing to meet the clear and convincing evidence standard required to establish a common-law marriage in Ohio. For example, in response to "[d]id you and the person you were living with have an understanding about your relationship when you began living together," Plaintiff stated that "[w]e discussed marriage and had plans and went to the courthouse during our 38 years together. We went around 2004[,] and the computers were down. *He* always said we were married but didn't feel we needed paper to say so." (Doc. #6, *PageID* #158). (emphasis added). Additionally, Plaintiff stated that Mr. H. bought their wedding rings in 2002 as a promise that a ceremonial marriage would be performed in the future and made a further statement that "*[h]e* always believed that we didn't need a marriage [license]. I never pushed him because we were committed to one another and had rings to prove it. They were a sign of a ceremony *to come*." *Id*. at 159. (emphasis added).

From Plaintiff's statements, the ALJ could reasonably have questioned whether Plaintiff had a present intent to marry before October 10, 1991. While Mr. H. may have believed that he and Plaintiff were married and did not require a ceremonial marriage or marriage license, it appears that Plaintiff may not have believed them to be married without either. Furthermore, Mr. H. bought their wedding rings, a symbol of marriage, in 2002, *after* the October 10, 1991 deadline, and stated that it was a promise that a ceremonial marriage would be performed in the future. Ohio courts have found that a ceremonial marriage after a purported common-law marriage is "inconsistent with assertions that a couple had a common-law marriage." *Shavel v. Shavel*, 2023-Ohio-4876, 233 N.E.3d 123, 132. Therefore, Plaintiff's Statement of Marital Relationship raises doubt about whether her present intent to marry existed before October 10, 1991, an element that she was

6

required to produce "a firm belief or conviction as to the allegations sought to be established" in the mind of the fact finder. *Everhart*, 14 N.E.3d at 446-47.

Similarly, portions of Plaintiff's hearing testimony further indicate that she may not have considered herself and Mr. H. married until the December 2019 ceremonial marriage. When asked by her counsel when it became the couple's intent to go get married, Plaintiff responded, "we had planned *to get* married I want to say years earlier [than December 2019], but there were circumstances that happened like loss of family members. But when we *got* married in 2019, we started making our arrangements … We'd always talked about it. But he said that we *would* get married." (Doc. #6, *PageID* #65). (emphasis added). Additionally, when Plaintiff's counsel asked a clarifying question of whether the December 2019 ceremonial marriage was a formal celebration of Plaintiff's common-law marriage or if Plaintiff and Mr. H ever felt like they had not been married, Plaintiff stated, "we lived as husband and wife, and the only thing that wasn't there was *the papers*…. [W]e pretty much – *they* recognized us as such. *But we didn't have the papers*. And early in our relationship, *he* would say, we're already married. What do we need papers for? So, he realized that in *my* heart, because of my spirituality and my faith in Jesus Christ, that *this was something that I needed*…. [Mr. H] felt that he needed to make *this legal for me* … he wanted to just go ahead and take that *next step* with me…" *Id*. at 66-67. (emphasis added). Plaintiff's statements, taken together, raise an inference that although Plaintiff acknowledged they were living as husband and wife, she and Mr. H. were not married in *her* mind until the December 2019 ceremonial marriage. This inference cuts directly against a present intent to marry before October 10, 1991, which Plaintiff had to prove by clear and convincing evidence to establish a common-

law marriage in Ohio. After hearing Plaintiff's testimony, it was reasonable for the ALJ to find that "the fact that [Plaintiff] and [Mr. H.] may have had a relationship before 1991 does not establish that they [had a] mutual contract to take each other as man and wife prior to October 10, 1991." *Id*. at 46. Therefore, without evidence of that mutual contract, Plaintiff has failed to prove a common-law marriage under Ohio law and is not entitled to Widow's Insurance Benefits.

Accordingly, Plaintiff's Statement of Errors is not well-taken.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #9) is **OVERRULED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

September 18, 2025

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge